J-S79025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD FRIEDLAND | |
| Appellant | No. 133 EDA 2016 |

Appeal from the Judgment of Sentence November 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015361-2010

BEFORE:  GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED JANUARY 12, 2017**

Edward Friedland appeals from the November 20, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his conviction for possession with intent to manufacture or deliver ("PWID").[1]  We affirm.

The trial court set forth the following facts:

> On May 13, 2010, Officers Walter Bartle and Patrick Banning set up plain-clothes narcotics surveillance in an unmarked vehicle on the 800 block of East Russell Street in Philadelphia, which is a high-drug area.  Officer Bartle, who has over 18 years of experience as a police officer and has conducted thousands of narcotics arrests, conducted the surveillance while Officer Banning acted in a back-up capacity to ensure their safety.  At approximately 1:30 p.m., Officer Bartle observed [Friedland] standing on the north side of the block, near H Street.  Five minutes later,

---

[1] 35 P.S. § 780-113(a)(30).

[Friedland] walked westbound into an open lot, reached into a cinder-block type wall, and removed a clear plastic bag with blue objects. [Friedland] walked from the back of the open lot, past the officers' vehicle, and went to the porch of a property across the street. He then placed the plastic bags underneath a rug on the porch.

At approximately 1:45 p.m., a Hispanic male, later identified as John Torres, walked onto the block where [Friedland] was standing and exchanged words. Officer Bartle observed Mr. Torres hand [Friedland] United States Currency. [Friedland] took the money, jogged southbound past the officers' vehicle to the rug on the porch, and retrieved items from underneath the rug. [Friedland] handed Mr. Torres a packet with blue items. Officer Bartle gave a description of Mr. Torres to his backup officers, and Officer Reilly subsequently stopped and arrested him on the 3500 block of Rand Street. [Friedland] and the District Attorney stipulated that the blue Ziploc packet that was recovered on Mr. Torres tested positive for crack cocaine and weighed 50 milligrams.

At approximately 1:50 p.m., a white female, later identified as Jacquelynn Granberg, approached [Friedland] and engaged in a brief conversation. Officer Bartle observed Ms. Granberg hand [Friedland] paper money. [Friedland] again jogged past the officers' vehicle to the porch with the rug, retrieved a baggie from under the rug, and handed Ms. Granberg the bag. Officer Bartle gave out a description of Ms. Granberg to his backup officers and Officer Bates later stopped and arrested her on the 900 block of Tioga Street. [Friedland] and the District Attorney stipulated that the six blue Ziploc packets of narcotics recovered from Ms. Granberg tested positive for crack cocaine and weighed 432 milligrams.

At approximately 1:55 p.m., a black male, later identified as Anthony Blanchard, walked up to [Friedland] and engaged on a brief conversation. After Mr. Blanchard handed [Friedland] money, [Friedland] again went to the same porch and retrieved a baggie from under the same rug. He then handed the items to Mr. Blanchard. At that point, Officer Bartle gave out a description to the backup officers and Officer Brooks stopped and arrested Mr. Blanchard at a Chinese corner store near Tioga and H

Street. [Friedland] and the District Attorney stipulated that the blue packet recovered from Mr. Blanchard tested positive for crack cocaine and weighed 45 milligrams.

Officer Jones later stopped and apprehended [Friedland] and recovered $280.00 on his person. In addition, Officer Bartle and Officer Santiago recovered 17 packets of crack cocaine, weighing 612 milligrams, from the rug on the porch. Further, Officer Bartle and Officer Reilly recovered 56 packets of crack cocaine that weighed 4.157 grams from the cinder-block wall. Officer Bartle testified that all of the packets of crack cocaine that were recovered matched in size, shape, and color.

1925(a) Opinion, 3/16/16, at 2-4 ("1925(a) Op.") (internal citations omitted). On September 5, 2015, a jury found Friedland guilty of PWID.[2] On November 20, 2015, the trial court sentenced Friedland to 4 to 8 years' incarceration, followed by 2 years' probation. Friedland filed a *pro se* motion for reconsideration of sentence on November 25, 2015, which the trial court denied. On December 29, 2015, Friedland timely filed a notice of appeal. Friedland raises the following issues on appeal:

1. Whether the sentence of four (4) to eight (8) years, followed by two (2) years probation, imposed by the trial court in the **case sub judice**, was unduly excessive and unreasonable, where 1) the sentence was more than one hundred percent higher than the maximum applicable guideline range of twenty-two (22) to forty-four (44) months, 2) the court's sentence was imposed consecutively to Appellant's prior sentence for second degree murder and robbery, 3) the court disregarded the nature and circumstances of Appellant's culpable offenses, neither of which involved violence, 4)

_____

[2] Although a prior jury trial commenced on November 13, 2013, the trial court declared a mistrial because of a mistaken representation concerning a photograph. N.T, 11/13/13, at 102-04.

the court failed to consider Appellant's rehabilitative needs as well as other mitigating factors, and 5) the court did not give reasons for sentencing Appellant outside of the sentencing guidelines[.]

2. Whether the trial court abused its discretion in granting the Commonwealth's motion in limine, precluding Appellant from questioning Philadelphia Police Officer Patrick Banning, who played a prominent role in the criminal investigation and arrest in the **case sub judice**, about his participation in numerous fraudulent investigations and arrests supervised by Philadelphia Police Officer Christopher Hulmes, who admitted under oath to committing perjury and swearing a false search warrant affidavit of probable cause, which prejudiced Appellant's right to a fair trial[.]

3. Whether the trial court abused its discretion in granting the Commonwealth's motion in limine precluding Appellant from questioning Officer Bartle about the Commonwealth's misuse of a photograph, which the Commonwealth falsely alleged was Appellant's stash location for narcotics, during the course of its investigation and prosecution of Appellant, which prejudiced Appellant's right to a fair trial[.]

Friedland's Br. at 5-6.

## I.    Discretionary Aspects of Sentence

Friedland first challenges the discretionary aspects of his sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa.Super. 2011). Before we address such a challenge, we first determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise

statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013) (quoting ***Commonwealth v. Malovich***, 903 A.2d 1247, 1250 (Pa.Super. 2006)); ***see also Allen***, 24 A.3d at 1064.

Friedland filed a timely notice of appeal, preserved his claim in a timely post-sentence motion, and included in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f). We must now determine whether he has raised a substantial question that the sentence is inappropriate under the sentencing code and, if so, review the merits.

We evaluate whether a particular sentencing issue raises a substantial question on a case-by-case basis. ***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220 (Pa.Super. 2011). A substantial question exists where a defendant raises a "plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa.Super. 2013) (citation and internal quotation marks omitted). A mere averment that a sentence is outside the sentencing guidelines, or a bald claim of excessiveness due to the consecutive nature of a sentence, does not raise a substantial question. ***Commonwealth v. Ousley***, 573 A.2d 599, 602 (Pa.Super. 1990); ***Dodge***, 77 A.3d at 1270. However, a defendant's challenge to the imposition of consecutive sentences as unduly excessive,

- 5 -

coupled with a claim that the trial court failed to consider defendant's rehabilitative needs, raises a substantial question. ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa.Super. 2015). Furthermore, a claim that a sentence is excessive, in conjunction with an assertion that trial court failed to consider mitigating factors, also raises a substantial question. ***Dodge***, 77 A.3d at 1272. An assertion that the trial court failed to sufficiently state its reasons for imposing a sentence outside the sentencing guidelines also raises a substantial question. ***Commonwealth v. Rodda***, 723 A.2d 212, 214 (Pa.Super. 1999).

Friedland first contends that his sentence was manifestly excessive because it exceeded the maximum guideline range by more than 100 percent and did not take into account his rehabilitative needs or other mitigating factors. This, Friedland argues, violated the fundamental norms of sentencing, thus raising a substantial question. Second, he contends that his claim raises a substantial question because the trial court did not provide a contemporaneous statement of reasons when imposing its sentence pursuant to 42 Pa.C.S. § 9721(b).[3] Third, he contends that he has raised a

---

[3] 42 Pa.C.S. § 9721(b) provides in relevant part:

> In every case where the court imposes a sentence or resentence outside the guidelines adopted by the Pennsylvania Commission on Sentencing under sections 2154 (relating to adoption of guidelines for sentencing), 2154.1 (relating to adoption of guidelines for county

*(Footnote Continued Next Page)*

substantial question because the trial court's sentence was consecutive to Friedland's sentence in a separate case where he was convicted of second-degree murder and first-degree robbery. He maintains that this consecutive sentencing violated the fundamental norms of sentencing because the crime in the instant case did not involve violence. Here, Friedland has advanced more than a mere assertion that his claim is outside the sentencing guideline and more than a bald claim of excessiveness due to the consecutive nature of his sentence. Therefore, Friedland has raised a substantial question for our review. *See Caldwell*, 117 A.3d at 770; *Dodge*, 77 A.3d at 1272; *Rodda*, 723 A.2d at 214.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Crump*, 995 A.2d 1280, 1282 (Pa.Super. 2010). "An abuse of discretion requires the trial court to have acted with manifest

_____
*(Footnote Continued)*

> intermediate punishment), 2154.2 (relating to adoption of guidelines for State intermediate punishment), 2154.3 (relating to adoption of guidelines for fines), 2154.4 (relating to adoption of guidelines for resentencing) and 2154.5 (relating to adoption of guidelines for parole) and made effective under section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines to the commission, as established under section 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Id.** at 1283.

Friedland's first argument, that the trial court failed to consider rehabilitative or other mitigating factors when fashioning a sentence outside the maximum guidelines, is without merit. In fashioning Friedland's sentence, the court considered the protection of the public, Friedland's rehabilitative needs, and the gravity of the offense. 1925(a) Op. at 6. At the outset of the sentencing hearing, both the Assistant District Attorney ("ADA") and Friedland[4] stated that Friedland's offense gravity score was

_____

[4] On January 15, 2015, Friedland was allowed to proceed *pro se*. **See** Docket at 16; **see Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). The transcript of the **Grazier** hearing is not in the certified record, but the following exchange occurred on the first day of trial:

> THE COURT: . . . Now, again, you understand that you're going to serve as your attorney. We went through the whole colloquy. You signed the waiver yesterday. You've been colloquied not only by me but a prior judge as well about your desire to represent yourself, correct?
>
> FRIEDLAND: Yes.

*(Footnote Continued Next Page)*

seven and his prior record score was one, which would put the guidelines at 9 to 16 months. Thus, the trial court was aware of the sentencing guidelines in fashioning Friedland's sentence. Furthermore, the trial court stated on the record that it had reviewed all of the reports[5] ordered for the sentencing hearing and listened to Friedland and the ADA. *Id.* at 11. The trial court stated:

> According to the Pre-Sentence Investigation Report, [Friedland] is currently incarcerated at SCI Graterford, serving a life sentence for second degree murder and conspiracy to robbery. While he was incarcerated from March 23, 2012 to September 24, 2015, [Friedland] had one inmate separation, four medical alerts, and four disciplinary infractions. Some infractions include fighting and violating regulations. [Friedland] had eight arrests, five convictions, and four commitments. His convictions include theft, drug dealing, indecent assault, robbery, and murder. Based upon his criminal history, the Pre-Sentence Supervisor concluded that [Friedland] is at a significant risk for incurring in future offenses. [Friedland]'s Mental Health Report further reflects the need to sentence [him] outside the guidelines. In addition to his laundry list of criminal convictions, [Friedland] admitted to a bad temperament. He recalled setting fire in the hallway at age 6 and killing a couple of cats by throwing them. The psychologist concluded in the Mental Health Report that if

*(Footnote Continued)* _____

N.T., 9/2/15, at 6-7. This exchange, coupled with the fact that no party disputes that a *Grazier* hearing occurred, leads us to conclude that the colloquy took place.

[5] "Where pre-sentence reports exist, we . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009) (quoting *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

> [Friedland] is returned to the community, he should be closely supervised. Taking into consideration [Friedland]'s extensive criminal history, it follows that [he] poses a threat to the public safety and is a danger to society.
>
> The trial court exercised the utmost care in fashioning [Friedland]'s sentence and did not manifest abuse of discretion. The court considered all mitigating factors while reading the Pre-Sentence Investigation Report, Mental Health Report, and Police Report and considered the arguments from both sides.

1925(a) Op. at 6-7. Additionally, in considering Friedland's rehabilitative needs, the trial court stated that it "ordered [Friedland] to submit to random drug screens to ensure the [he] would not relapse into substance abuse, as reflected in his Pre-Sentence Investigation report." *Id.* at 7. We conclude that the trial court considered Friedland's rehabilitative needs and mitigating factors in sentencing him outside the guidelines and, therefore, did not abuse its discretion.

Friedland's second argument, that the trial court did not provide a contemporaneous statement of reasons when imposing its sentence, is also meritless. This Court has explained the requirements of section 9721(b) as follows:

> The statute requires a trial judge who intends to sentence a defendant outside the guidelines to demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as he also states of record "the factual basis and specific

- 10 -

reasons which compelled [him] to deviate from the guideline range."

***Commonwealth v. Johnson***, 666 A.2d 690, 693 (Pa.Super. 1995). We have also explained that the purpose of a statement of reasons is to have a "record of the [trial] court's rationale" and "as evidence that [it] considered the guidelines." ***Id.*** As stated above, the trial court was aware that it was sentencing outside of these guidelines.[6] Following the ADA's reasons for requesting an increased sentence and Friedland's request to sentence within the guidelines, the trial court stated on the record that it agreed with the ADA's reasoning. N.T., 11/20/16, at 11. Finally, the trial court stated that it was imposing its sentence because it considered Friedland a danger to society and such a sentence was for the protection of the public. ***Id.*** at 12.

Friedland's third argument, that the trial court abused its discretion in sentencing him consecutively to a separate case where he was convicted of second-degree murder and first-degree robbery, is also without merit. "[T]he sentencing court [has] discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa.Super 2011). The trial court found that "the two sentences [were] based on two separate crimes, with two separate fact [patterns]." 1925(a)

_____

[6] ***See supra*** n.5.

- 11 -

Op. at 7. At sentencing, the trial court agreed with the ADA's reasoning that just because Friedland had committed a more serious offense for which he had already been sentenced, he should not get the benefit of getting a concurrent sentence and that "[i]t would be like giving somebody a discount because you become even more . . . of an egregious criminal." N.T., 11/20/16, at 9; *see Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa.Super. 1995) (stating appellant should not be entitled to "a volume discount for his crimes by having all sentences run concurrently"). The trial court also relied on Friedland's criminal history, the reports prepared for the sentencing hearing, and the risk of Friedland's recidivism. 1925(a) Op. at 6-7. We find no abuse of discretion.

## II. Admissibility of Evidence

Next, Friedland contends that the trial court abused its discretion in granting the Commonwealth's two motions *in limine*: (1) preventing Friedland from questioning Officer Banning about his participation in fraudulent investigations and (2) preventing Friedland from questioning Officer Bartle about a photograph that was misused in the prior trial, which led to a mistrial.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be

found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (internal citations and quotation marks omitted). Evidence is admissible where it is "relevan[t] and probative . . . . Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Reese*, 31 A.3d 708, 716 (Pa.Super. 2011).

This Court has stated the following regarding motions *in limine*:

A motion in limine is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A motion in limine differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion in limine precludes evidence that was constitutionally obtained but which is prejudicial to the moving party.

*Id.* at 715 (quoting *Commonwealth v. King*, 689 A.2d 918, 921 (Pa.Super. 1997)).

Friedland maintains that the trial court abused its discretion in precluding his questioning of Officer Banning regarding fraudulent investigations by his former partner, Officer Hulmes. We disagree. The trial court found that Officer Banning's role on the night of the investigation was

minimal and that his main duty was "for backup and protection." 1925(a) Op. at 9. As the trial court stated: "Officer Banning did not prepare a PARS Report, take detailed notes of the incident, nor recover any items." *Id.* The trial court further said that "questioning [Officer Banning] about his participation in fraudulent investigations and arrests under the supervision of Officer Hulmes is irrelevant to and beyond the scope of this case." *Id.* Thus, the trial court properly limited any questioning of Officer Banning to the day Friedland was arrested. *Id.*

Next, Friedland argues that the trial court abused its discretion in precluding him from questioning Officer Bartle regarding the misuse of a photograph in a prior trial,[7] which had led to a mistrial. The trial court permitted Friedland to use the photograph for authentication purposes, but precluded questioning regarding communications Officer Bartle had concerning the photograph. 1925(a) Op. at 10. We agree with the trial court that "[Friedland] was in no way prejudiced by the trial court's decision to preclude [him] from questioning Officer Bartle about his communications concerning the misuse of [the] photograph." *Id.* We conclude that the trial

_____

[7] In the prior trial, the Commonwealth discovered a mistake regarding the identification of the photograph. N.T., 11/13/13, at 86. Although not intentional, the Commonwealth failed to identify the mistake for defense counsel. *Id.* at 86-87. During opening arguments, defense counsel incorrectly used the photograph under the mistaken belief that it represented Friedland's stash location. *Id.* at 86. Because of that confusion, the trial court declared a mistrial. *Id.* at 102-03.

- 14 -

court did not abuse its discretion in granting the Commonwealth's motion *in limine*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017