689 A.2d 918

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Andre KING, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1996.

Filed Jan. 24, 1997.

74

Hugh Burns, Jr., Assistant District Attorney, for Commonwealth, appellant.

John Belli, Philadelphia, for appellee.

Before McEWEN, P.J., and POPOVICH and MONTEMURO,* JJ.

* Retired Justice assigned to Superior Court.

MONTEMURO, Judge:

This is Commonwealth/Appellant's interlocutory appeal from a calendar judge's Order partially granting Defendant/Appellee's motion *in limine* to exclude certain evidence from his homicide trial. We affirm in part and reverse in part.

On November 14, 1994, Appellee, Andre King, was arrested for the murder of Troy Braxton.[1] Shontae Jernigan, known as Tae, was the only eyewitness to the crime. After a preliminary hearing on November 23, 1994, Appellee was held for court on charges of murder and possessing an instrument of crime. Appellee petitioned for bail, and a bail hearing was conducted on January 18, 1995 by the calendar judge. At the hearing, the Commonwealth presented the testimony of Johnny Harris, an inmate incarcerated with Appellee after Appellee's arrest, who testified that Appellee told him that he was innocent of the homicide, that he knew the name of the witness against him (which Mr. Harris remembered began with a "T"), and that he wanted to "lay her down", which Mr. Harris explained meant to kill her. (N.T. 1/18/95 at 5, 17, 20–21). Mr. Harris also gave a signed statement to the F.B.I. which was incorporated into the record. At both the preliminary and bail hearings, the Assistant District Attorney noted that a few days after Appellee allegedly spoke to Mr. Harris, and two days before the preliminary hearing, a friend of Appellee's attempted to break into Ms. Jernigan's home. The judge denied Appellee's bail request.

On October 11, 1995, the parties appeared before the assigned trial judge for a status listing, at which time Appellee waived his right to a jury trial and a bench trial was scheduled for December 5, 1995. However, on December 4, Appellee presented a motion *in limine* to the *calendar judge* requesting she exclude the testimony of Mr. Harris and any evidence of the alleged break-in at Ms. Jernigan's home two days before the preliminary hearing. After hearing argument on the motion, the calendar judge granted Appellee's motion in part

1. Mr. Braxton was shot and killed on May 8, 1994.

by excluding most of the evidence from the Commonwealth's case-in-chief. However, the judge denied the motion in part by permitting Mr. Harris to testify that "there was a conversation between the [Appellee] and Mr. Harris, and that Mr. Harris became aware that the woman who was a witness against him was a woman named T." [2] (N.T. 12/4/95 at 20). In addition, the judge left open the possibility that testimony at trial may deem the evidence admissible; therefore, she ruled that the Commonwealth may reapply to her (the calendar judge) for admission of the evidence based on events that occur at trial.[3]

The next day, before the scheduled trial, the Assistant District Attorney notified the trial judge that the Commonwealth was appealing the calendar judge's Order. The trial judge disclosed that she had spoken to the calendar judge about the Order, that the calendar judge told her the ruling was very narrow, and that the calendar judge believed that the evidence was not necessary to the prosecution. This timely appeal followed.

■ Initially, we note that the calendar judge's Order is interlocutory. Therefore to appeal, the Commonwealth must certify that the order will terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d). The Commonwealth's good faith certification, alone, provides an absolute right to appeal; it is not required to demonstrate the need for the evidence. *Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386–87 (1985). Because, in the instant case, the Commonwealth has made the proper certification, the appeal is properly before this Court.

On appeal, the Commonwealth contends that the calendar judge erred: (1) in preempting later evidentiary rulings dur-

2. Though the calendar judge's 1925(a) Opinion indicates that she admitted all of Mr. Harris's testimony, her oral order at the hearing clearly contradicts this assertion.

3. Specifically, the judge noted that "[i]f the witness, at any time on the stand, indicates that she in fact was intimidated and changes her testimony ... [she] would permit the evidence to come forward." (N.T. 12/4/95 at 12).

ing trial before another judge; (2) in excluding evidence of Appellee's "consciousness of guilt"; and (3) in having an *ex parte* discussion with the trial judge regarding her Order.

Appellant's first argument involves the propriety of the calendar judge's order: was it appropriate for the *calendar judge* to entertain and rule on Appellee's unfiled oral motion one day before trial? The Commonwealth argues that the motion was untimely and Appellee's actions constituted judge shopping. We find that the calendar judge's actions were proper.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. *Commonwealth v. Johnson,* 399 Pa.Super. 266, 269, 582 A.2d 336, 337 (1990), *aff'd,* 534 Pa. 51, 626 A.2d 514 (1993). It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. *Commonwealth v. Metzer,* 430 Pa.Super. 217, 227, 634 A.2d 228, 232 (1993). A motion *in limine* differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion *in limine* "precludes evidence that was constitutionally obtained but which is prejudicial to the moving party." *Id.* at 228, 634 A.2d at 233.

In the instant case, the Commonwealth first argues that the calendar judge should not have entertained Appellee's motion because the motion was untimely. The Commonwealth contends that because Appellee became aware of the evidence at the bail hearing eleven months before trial, Appellee should have filed and served a written motion pursuant to Pa. R.Crim.P. 306, 307, 9020 and 9022, and 42 Pa.C.S.A. § 2756(a)(1). However, the Commonwealth did not argue this at the motion hearing, and the calendar judge did not have the opportunity to consider the issue; therefore, the argument is waived. Pa.R.A.P. 302(a).

■ The Commonwealth also contends that it was inappropriate for the *calendar judge* to hear Appellee's motion; Appellee was simply judge shopping. We disagree.

As Appellee notes in his brief, Philadelphia's local court rules mandate that all pretrial motions in homicide trials are to be heard by the motions judge. Phila.Crim.R. 605. Appellee asserts, and Commonwealth does not deny, that the calendar judge who heard Appellee's motion was also the assigned motions judge. Therefore, according to Philadelphia's local rules, it was proper for the calendar judge to entertain the motion.[4]

In its reply brief, the Commonwealth counters this argument by noting that the local rule must be read in the context of the statewide rules that require "all pretrial motions to be filed in writing, within 30 days of arraignment and served on the Commonwealth." (Appellant's Reply Brief at 10)(emphasis omitted). *See* Pa.R.Crim.P. 307. The Commonwealth reasons that Appellee's delay in bringing this motion allowed him to judge shop, and choose whether the calendar judge or trial judge would hear the motion.

As discussed above, the Commonwealth has waived any argument regarding the timeliness of the motion. Moreover, it is important to note that this case is scheduled for a bench trial; therefore, the trial judge will be sitting as factfinder. The Pennsylvania Supreme Court has recognized that "[t]he better practice in a multi-judge county would be to have the trial conducted by someone other than the judge who presided over the Suppression Proceedings particularly where there is a waiver of jury accepted." *Commonwealth v. Paquette,* 451 Pa. 250, 258, 301 A.2d 837, 841 (1973). *Compare Commonwealth v. Lewis,* 314 Pa.Super. 298, 304, 460 A.2d 1149, 1152 (1983)(stating that "while it may be the better practice to have a different judge preside over trial than preside over pre-trial proceedings, such a practice is not constitutionally required").

4. Although Rule 605 also states that all motions must be filed no later than 10 days before the trial date, the Commonwealth did not raise this argument either before the calendar judge or in its brief. Therefore, we consider this issue waived. Pa.R.A.P. 302(a).

Obviously, Appellee did not want the trial judge (as factfinder) to hear this evidence if it was ruled excludable. Similarly, the Commonwealth wanted the trial judge to rule on the motion; therefore, even if the judge excluded the evidence, she would be aware of it. Although "the prevailing view is that judicial fact-finders are capable of disregarding most prejudicial evidence[,]" *Commonwealth v. Council*, 491 Pa. 434, 439, 421 A.2d 623, 625 (1980), we find that, because the trial judge would be sitting as factfinder, and the Philadelphia court rules permit a judge other than the trial judge to hear pre-trial motions, it was proper for the calendar judge to entertain Appellee's motion.[5]

The Commonwealth also contends that the calendar judge erred by excluding Mr. Harris' testimony and evidence of the alleged break-in at Ms. Jernigan's home. The trial court (in the instant case, the calendar judge) has broad discretion concerning the admissibility of evidence; thus we will not reverse a trial court's ruling absent a manifest abuse of discretion. *Commonwealth v. Conway*, 368 Pa.Super. 488, 494–95, 534 A.2d 541, 544 (1987), *allocatur denied*, 520 Pa. 581, 549 A.2d 914 (1988). Preliminarily, evidence must be relevant; however, a court may exclude relevant evidence if it determines that the prejudicial impact of the evidence outweighs its probative value. *Commonwealth v. Costal*, 351 Pa.Super. 200, 203, 505 A.2d 337, 338 (1986).

First, we will consider Mr. Harris' testimony that Appellee told him that he knew the identity of Commonwealth's eyewitness and he wanted to "lay her down." Evidence that a defendant has threatened to kill a Commonwealth witness may be admissible to show the defendant's consciousness of guilt. *Commonwealth v. Markle*, 239 Pa.Super. 505,

**5.** The Commonwealth also claims the calendar judge's ruling is erroneous because it is unworkable and preempts the authority of the trial judge: "the trial apparently would have to be stopped ... so that the parties could return to the calendar court ... [who] would then weigh the relevance, probative value, and prejudicial effect of the excluded evidence *against testimony it had not even heard."* (Appellant's Brief at 27) (emphasis in original). Because we conclude that it was proper for the calendar judge to hear the motion, we need not address this claim.

515, 361 A.2d 826, 831 (1976). *See also Commonwealth v. Jones,* 540 Pa. 442, 446, 658 A.2d 746, 748 (1995) (stating that although "[e]vidence of a defendant's attempt to dispose of a witness may be relevant and admissible to establish consciousness of guilt," and despite witness' assertion defendant tried to kill her, there was no proof that defendant gave witness tainted cocaine); *Commonwealth v. Pestinikas,* 421 Pa.Super. 371, 389, 617 A.2d 1339, 1348 (1992)(holding "an attempt by a criminal defendant to obtain and apply political pressure for the purpose of obtaining a dismissal of charges is a relevant circumstance tending to show consciousness of guilt").

In the instant case, Appellee's statement to Mr. Harris was relevant for two reasons: (1) to show Appellee knew the name of the sole eyewitness before the preliminary hearing, thereby implying that Appellee perpetrated the crime; and (2) to show that he wanted to kill the Commonwealth's eyewitness, also implying that he was guilty of the crime. Although in her Opinion, the calendar judge states that all of Mr. Harris' testimony was admissible, in her Order she stated that Mr. Harris could testify only that "there was a conversation between [Appellee] and Mr. Harris, and that Mr. Harris became aware that the woman who was a witness against [Appellee] was a woman named T." (N.T. 12/4/95 at 20). Therefore, we reverse the calendar judge's Order to conform it to her Opinion, and permit Mr. Harris to testify that Appellee told him "that the evidence against him was a woman (referring to Ms. Jernigan, also known as Tae or Tay); that she had lied; and that [Appellee] 'wanted to lay her down.'" (Motion Hearing Op. at 2).

The Commonwealth further argues that evidence of the alleged break-in at Ms. Jernigan's home is also admissible because it inferentially establishes Appellee's consciousness of guilt: "[w]hen viewed with the Harris testimony that [Appellee] knew who the witness was and wanted to kill her, the concomitant break-in attempt by a friend of [Appellee's] permits an inference that [Appellee] . . . is linked to the attack on the eyewitness's home." (Appellant's Brief at 22). The Pennsylvania Supreme Court has acknowledged that threats by

third persons against witnesses may be relevant if the Commonwealth shows that the defendant is linked in some way to the threats. *Commonwealth v. Carr*, 436 Pa. 124, 127, 259 A.2d 165, 167 (1969). In *Commonwealth v. Morrison*, 180 Pa.Super. 121, 118 A.2d 258 (1955), *cert. denied*, 352 U.S. 823, 77 S.Ct. 31, 1 L.Ed.2d 47 (1956), this court upheld a trial court's admission of evidence of a third party's attempt to prevent a victim from testifying. In that case, the third party, who was a witness for the defense, sent a letter to the victim, mailed in defendant's printed business envelopes, urging him to remain outside of Pennsylvania. *Id.* at 130–31, 118 A.2d at 262. Moreover, the defendant transferred a car to the third party who then reassigned it to the victim so that he could drive out of state. *Id.* at 131, 118 A.2d at 262. The court found that " '[a]ll the attending circumstances and the letters themselves indicate clearly that they are the acts of the defendant.' " *Id.* Conversely, in *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972), the court granted a new trial because the Commonwealth's evidence that the defendant's wife's boss spoke to a juror was inadmissible and prejudicial since there was no evidence that the wife or defendant knew of, or approved of, the conversation. *Id.* at 339, 290 A.2d at 251.

Similarly, in the instant case there is no evidence that Appellee organized or ordered the break-in at Ms. Jernigan's home.[6] The calendar judge properly weighed the probative value of this evidence against its prejudicial impact and, in her discretion, ruled the evidence inadmissible. Since we find no abuse of discretion, we affirm this ruling.

 Finally, the Commonwealth contends that we should remand the case to a different trial judge since the calendar judge and trial judge had an *ex parte* discussion regarding the

---

6. There is not even any evidence, thus far, that the break-in occurred. At both the preliminary and bailment hearings, the Assistant District Attorney stated that there was an attempted break-in at Ms. Jernigan's home. This statement, however, is not evidence.

calendar judge's Order.[7]  Because we find no prejudice to the Commonwealth, we decline to remand to a different trial judge.

On the day of the scheduled trial, the trial judge revealed that she had spoken with the calendar judge earlier that day to find out exactly what her ruling was on Appellee's motion *in limine,* since the Order was not yet in writing.  (N.T. 12/5/95 at 3).  It is obvious, from the ensuing conversation, that the trial judge fully believed the bench trial would begin that day; therefore, the need for a clear ruling was obvious. The Commonwealth, however, argues that the *ex parte* discussion was improper and it prejudiced the trial judge against the Commonwealth's evidence.

We find no caselaw that specifically addresses the propriety of an *ex parte* discussion between judges of coordinate jurisdiction; moreover, the cases cited by the Commonwealth are not helpful.  In *Yohn v. Love,* 887 F.Supp. 773 (E.D.Pa.1995), a federal district court found that an *ex parte* conversation between a Pennsylvania State Supreme Court justice and a trial judge, after which the trial judge claimed that the justice directed him to admit evidence that he had already ruled inadmissible, was improper.  *Id.* at 787.  This directive usurped the trial judge's discretion, ignored the proper channels of appellate review, and deprived the defendant of procedural due process.  *Id.* at 787–90.  Similarly, in *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995), the Pennsylvania Supreme Court found it was error for a judge of coordinate jurisdiction to reverse an order of a predecessor court "without any substantive change in the

7.  It is interesting to note that the Commonwealth explicitly states that this is not a recusal request: instead, "it is the appropriate legal remedy for a due process violation, as well as an appropriate sanction for defendant's judge shopping."  (Appellant's Brief at 34).  Obviously, the Commonwealth realizes, as Appellee asserts, that there is no evidence that the trial judge's ability to be fair and impartial has been compromised, and the trial judge, herself, has not yet had the opportunity to consider a recusal request.  Thus, recusal is inappropriate.  See *Commonwealth v. Lemanski,* 365 Pa.Super. 332, 339, 529 A.2d 1085, 1088 (1987) ("[r]ecusal is required whenever there is a substantial doubt as to a jurist's ability to preside impartially").

evidence or controlling law." *Id.* at 590, 664 A.2d at 1339. In the instant case, there were no such actions. The trial judge simply sought a clarification of the calendar judge's ruling; she did not attempt to review the propriety of the ruling herself.

Moreover, after considering the entire pretrial discussion between the trial judge, the Assistant District Attorney, and the defense attorney, we conclude that the *ex parte* conversation did not prejudice the Commonwealth by violating the Commonwealth's due process rights.[8] The Commonwealth is most concerned with the trial judge's comments that the calendar judge told her "this evidence did not form the basis for probable cause for [Appellee's] arrest" and that the calendar judge "did not think this evidence has anything to do with the prosecution." (N.T. 12/5/95 at 4–6). However, the trial judge also stated that she did not know anything about the witness whose testimony was considered in the motion *in limine.* (N.T. 12/5/95 at 2). Therefore, we conclude that, the calendar judge's statements regarding her *opinion* of the importance of the excluded evidence did not prejudice the trial judge. The trial judge does not even know which witness was the subject of the motion; when she ultimately hears the admissible evidence, she can weigh its importance herself.

Therefore, we remand this case to the calendar judge to amend her Order to conform it to her Opinion and permit the testimony of Johnny Harris. However, we affirm the calendar judge's decision to exclude evidence of the alleged break-in. We also decline to remand the case to a different trial judge.

Order affirmed in part and remanded in part. Jurisdiction relinquished.

POPOVICH, J., concurs in the result.

**8.** Because we have already concluded that Appellee did not impermissibly judge shop, we need not address the Commonwealth's contention that the case should be remanded to a different trial judge for that reason.