J-S11032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT W. BASS, | : | |
| | : | |
| Appellant | : | No. 623 EDA 2017 |

Appeal from the Judgment of Sentence August 26, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0004051-2015

BEFORE: OTT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED MAY 29, 2018**

Robert W. Bass ("Bass") appeals from the judgment of sentence entered following his convictions of two counts of criminal attempt (theft and murder), and one count each of aggravated assault, robbery, conspiracy, burglary, trespass, recklessly endangering another person ("REAP"), and terroristic threats.[1] We affirm.

On October 16, 2014, Bass and his cohort, Jerald Batts ("Batts"), forced their way into the home of Shania Wessels ("Wessels") and Kenneth Lyles ("Lyles"). Kasheem Bass ("Kasheem") remained in a car parked a few houses from Wessels's residence. When they found no money in the living room of the residence, Bass and Batts forced Wessels upstairs to unlock the bedroom door. Lyles, asleep in the bedroom, woke to find a firearm and a flashlight

---

[1] *See* 18 Pa.C.S.A. §§ 907, 2702, 3701, 903, 3502, 3503, 2705, 2706.

pointed at his face. The men demanded money and threatened to kill Lyles and Wessels. Lyles began to fight for control of the firearm. Suddenly, Lyles heard Batts say "bust him," at which time Bass shot Lyles twice. One shot grazed Lyles's arm; the other shot entered Lyles's abdomen. Bass and Batts fled the scene. As they did so, Bass picked up his fired casings, but left the Halloween mask that he had been wearing and a 9mm semi-automatic handgun.

The following day, Bass called Wessels, his cousin, and admitted his part in the incident. Kasheem subsequently told police that he was present during the home invasion, but was unaware of the purpose of the visit to the home. Subsequently, Batts admitted to police his involvement in the incident, and identified Bass as the man who had shot Lyles.

The trial court summarized what next transpired as followed:

> [] Bass was arrested on April 2, 2015, and charged with attempted murder, burglary, robbery and related offenses. [Bass] was bound over for court on all charges[,] following a preliminary hearing on April 16, 2015. A jury was empaneled on April 25, 2016. Prior to the jury being sworn on April 26, the Commonwealth presented a [M]otion *in limine* to introduce a video that was discovered on YouTube the previous day. The video depicted [Bass's] brother threatening the cooperating co-defendant with the kidnapping, maiming and possible death of the witness'[s] son[,] as well as the cooperating witness. After viewing and hearing argument on the admissibility of the video[,] the [trial court judge] held the [M]otion in abeyance pending the testimony of the cooperating witness[,] who allegedly could lay the foundation for the video's admission. … It was at that time that [Bass] decided to waive his right to a jury trial. The jury was then dismissed.

Trial Court Opinion, 6/20/17, at 1-2.

After a bench trial, the trial court convicted Bass of the above-described charges. Following the preparation of a pre-sentence investigation report, the trial court sentenced Bass to an aggregate prison term of ten to twenty years, followed by ten years of probation. Bass filed a post-sentence Motion, which the trial court denied. Thereafter, Bass filed the instant timely appeal.

Bass presents the following issue for our review: "Did the [trial] court violate [Bass's] right to a jury trial by refusing to prohibit the Commonwealth from introducing unduly prejudicial and inadmissible evidence into trial that the Commonwealth only produced after the jury was empaneled?" Brief for Appellant at 4, 16. Bass argues that the trial court's delay in ruling upon the admissibility of the YouTube video recording

> forced [Bass] into a Hobson's choice: either proceed to a trial with the empaneled jury and risk that jury hearing explosive, prejudicial and inadmissible evidence, or give up his right to a trial by jury and hope that a professional jurist hearing the case alone would be less swayed by the improper evidence….

*Id.* at 16-17. According to Bass, the trial court's delay deprived Bass of his fundamental right to a trial by jury. *Id.* at 17.

Regarding the YouTube video, Bass argues that, pursuant to **Commonwealth v. King**, 689 A.2d 918, 923 (Pa. Super. 1997), threats by third persons against a witness may be relevant "if the Commonwealth shows that the defendant is linked in some way to the threats." Brief for Appellant at 19. Bass states that in **King**, this Court held that "the prejudicial impact of third-party intimidation outweighed its probative value and therefore was

properly excluded by the [trial] court." *Id.* (citation omitted). Bass asserts that in the instant case, the Commonwealth failed to demonstrate any link between Bass and the person in the video. *Id.* at 19-20.

Bass additionally challenges the Commonwealth's timing of its Motion *in limine*. Specifically, Bass takes issue with the Commonwealth filing its Motion *in limine* after *voire dire* had ended. *Id.* at 20. According to Bass, "[g]iven that [Bass] had no way of knowing what could conceivably transfer plainly inadmissible evidence into admissible evidence, he waived his right to a trial by jury and instead proceeded to a trial by judge." *Id.* Bass asserts that "[w]hen considering the timing of the [M]otion, the disclosure of the video, and the [trial] court's refusal to rule on the inadmissible evidence, the issue is elevated from a traditional evidentiary matter to one of constitutional dimensions." *Id.* Basically, Bass argues that by holding its ruling in abeyance, the trial court interfered with his constitutional right to a trial by a jury. *See id.*

Initially, we observe our standard of review:

> "[A] motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, [therefore] our standard of review ... is the same as that of a motion to suppress." ***Commonwealth v. Mitchell***, 588 Pa. 19, 902 A.2d 430, 455 (Pa. 2006). The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion. ***Commonwealth v. Baumhammers***, 599 Pa. 1, 960 A.2d 59 (Pa. 2008).

***Commonwealth v. Rosen***, 42 A.3d 988, 993 (Pa. 2012).

Since the prosecution prevailed in the [trial] court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted[,] when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa. Super. 2004) (citation omitted).

In *King*, at a bail hearing, an inmate incarcerated with the defendant testified at the defendant's bail hearing. *King*, 689 A.2d at 920. According to the inmate, the defendant (a) claimed to be innocent of homicide; (b) knew the name of the Commonwealth's witness against him; and (c) threatened that he wanted to "lay her down," which the inmate interpreted to mean that the defendant wanted to kill the witness. *Id.* A few days after the defendant had spoken with the inmate, and two days before the defendant's preliminary hearing, a friend of the defendant attempted to break into the witness's home. *Id.* Subsequently, the defendant presented a motion *in limine* to preclude the inmate's testimony related to his threat, and any evidence related to the break-in at the witness's home. *Id.* Although the trial court excluded much of the Commonwealth's evidence, the court permitted the inmate "to testify that there was a conversation between the [defendant] and [the inmate,] and that [the inmate] became aware that the woman who was a witness against [the defendant] was a woman named T." *Id.* (internal quotation marks omitted).

On appeal, this Court reversed the exclusion of the evidence related to the defendant's threat against the witness. *Id.* at 922-23. Specifically, this Court recognized that "[e]vidence that a defendant has threatened to kill a Commonwealth witness may be admissible to show the defendant's consciousness of guilt." *Id.* at 922 (citations omitted). Regarding the evidence of the third-party's attempt to break into the witness's home, this Court stated that "threats by third persons against witnesses may be relevant **if the Commonwealth shows that the defendant is linked in some way to the threats.**" *Id.* at 923 (emphasis added). However, the Court affirmed the trial court's ruling, stating that there was "no evidence that [the defendant] organized or ordered the break-in at [the witness's] home. The [trial court] properly weighed the probative value of this evidence against its prejudicial impact and, in her discretion, ruled the evidence inadmissible." *Id.*

By contrast, in the instant case, the trial court did not rule on the admissibility of the evidence regarding threats against the witness lodged by Bass's brother. Rather, the trial court held the Motion in abeyance, pending testimony by the cooperating witness that would establish a foundation for its admission. N.T., 4/26/16, at 17. We discern no abuse of discretion in this regard, as an appropriate foundation, *i.e.*, tying Bass to the threats made by his brother, would render the statements admissible. *See King*, 689 A.2d at 923.

Regarding Bass's assertions that the timing of the Motion *in limine*, and the trial court's holding its ruling in abeyance, violated his right to a jury trial, we adopt the trial court's conclusion that the claim lacks merit, and the rationale for the court's conclusion, as set forth in its Opinion. **See** Trial Court Opinion, 6/20/17, at 7-9.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/18