**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONY TILLMAN | : | |
| | : | |
| Appellant | : | No. 926 EDA 2018 |

Appeal from the Judgment of Sentence November 7, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006940-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TONY TILLMAN | : | |
| | : | |
| Appellant | : | No. 927 EDA 2018 |

Appeal from the Judgment of Sentence November 7, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006941-2016

BEFORE: PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:          **FILED DECEMBER 06, 2019**

In this consolidated case, Tony Tillman appeals from his judgments of

sentence, entered by the Court of Common Pleas of Philadelphia County, for

first-degree murder, carrying a firearm without a license, and possession of

_____

[*] Former Justice specially assigned to the Superior Court.

an instrument of a crime ("PIC") under Docket No. CP-51-CR-0006940-2016 and for aggravated assault and retaliation against a witness under Docket No. CP-51-CR-0006941-2016.[1]

Appellant shot and killed Aaron Walker in Philadelphia on the evening of September 18, 2015. Following the murder, Appellant told Roger Pickens, one of Appellant's associates with whom he sold drugs, that Appellant had "f***ed up" because he had dropped his hat at the scene of the shooting. N.T. Trial, 11/2/17, at 55.[2] Police recovered a red fedora from the scene of the shooting. Appellant had been seen wearing a red fedora on the day of the shooting and subsequent DNA testing confirmed that the fedora contained DNA matching Appellant's.

Five days after the shooting, another one of Appellant's associates, Kevin Rideout, was taken into custody for drug-related offenses. At that time, Rideout gave the police information implicating Appellant in the murder of Walker. Rideout was released from custody that same day, and told Pickens that he had given the police information on the shooting. The next day, Appellant met with Pickens, told him he knew about Rideout's statement to

---

[1] Appellant's separate appeals were consolidated by this Court's order dated May 31, 2019.

[2] The record contains two separate transcriptions of Pickens' testimony at Appellant's trial on November 2, 2017, both of which reference the same docket number. It appears that the only distinction between the two transcriptions is that they are paginated differently. This opinion cites to the page numbers in the transcription that coordinate with the page numbers used by the trial court.

the police implicating him in the murder, and said that Rideout "had to go." *Id.*, at 62.

On October 8, 2015, Pickens was on the same block as Rideout when Appellant told Pickens to "clear the block" for his safety. *Id.*, at 64. Afterwards, three men turned the corner onto the block and opened fire on Rideout. Although Rideout sustained six gunshot wounds, he survived. Appellant later told Pickens that Rideout was supposed to be killed.

Pickens was subsequently arrested on drug charges. At that time, he gave a videotaped statement to police implicating Appellant in the Walker murder and agreed to cooperate with police on the matter.

On March 15, 2016, Appellant was arrested for the murder of Walker as well as for attempted murder, aggravated assault and related offenses for the shooting of Rideout. The cases were consolidated.

Four months later, Pickens testified against Appellant at Appellant's preliminary hearing. Following Pickens' release from prison on the unrelated drug charges, he feared for his safety after testifying against Appellant. As a result, the Commonwealth relocated Pickens.

On July 15, 2017, Appellant's and Pickens' drug supplier, Edward Raymond, approached Pickens in the front yard of his relocated residence and told him "I know where you been at … I could have reached out and touched you, but I didn't. I waited. I wanted to give you a chance to make this sh** right." *Id.*, at 88-89. Raymond also told Pickens that he had been to prison to see Appellant, and that Appellant had "told him everything." *Id.*, at 89.

Specifically, Raymond informed Pickens that Appellant told him he knew Pickens had testified against him at his preliminary hearing. *Id.*, at 89. Raymond then retrieved a gun from his vehicle, put it under his shirt, and asked Pickens if he was going to make it right. Pickens fled into his house and heard Raymond tell him "I know where you're at." *Id.*, at 90. Pickens reported this incident, made a statement to the police, and was once again relocated.

Appellant's consolidated jury trial began on October 31, 2017. Prior to trial, Appellant filed a motion *in limine* seeking to bar Pickens from testifying about Raymond's alleged witness intimidation. Following a hearing, the trial court denied the motion and Pickens was allowed to testify at trial about Raymond's efforts to intimidate him into changing his testimony.

Ultimately, the jury convicted Appellant of first-degree murder, PIC and carrying a firearm without a license in connection with the Walker murder. The jury also convicted Appellant of aggravated assault and retaliation against a witness in connection with the Rideout shooting. The court then sentenced Appellant to an aggregate term of life imprisonment without parole.

Appellant devotes the entire argument section of his brief to his claim that the trial court erred by denying his motion *in limine* and allowing Pickens to testify about Raymond's efforts to intimidate him. This claim is without merit.

> We review a trial court's decision to grant or deny a motion *in limine* with the same standard of review as admission of evidence at trial. With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's

decision to admit or deny evidence on a showing that the trial court clearly abused its discretion.

***Commonwealth v. Flamer***, 53 A.3d 82, 86 (Pa. Super. 2012) (citations omitted).

First, Appellant contends the trial court erred in finding that Pickens' testimony was admissible as evidence of Appellant's consciousness of his guilt. Any attempt by a defendant to interfere with a witness's testimony is admissible to show a defendant's consciousness of guilt. ***See Commonwealth v. Johnson***, 838 A.2d 663, 680 (Pa. 2003). Generally, threats by third persons against witnesses are only admissible to show a defendant's consciousness of guilt if the defendant is linked in some way to the making of the threats. ***See Commonwealth v. Bryant,*** 462 A.2d 785, 788 (Pa. Super. 1983) (citation omitted).

Here, Appellant asserts that there was no evidence linking him to the threats Raymond, a third party, made to Pickens. Instead, Appellant maintains, the Commonwealth merely established that Appellant had a relationship with Raymond and that Raymond had spoken to Pickens, which is insufficient grounds to find a connection between Appellant and Raymond's attempt to intimidate Pickens. We disagree.

As the trial court stated in its opinion below, the Commonwealth did in fact produce evidence that Appellant was involved in Raymond's efforts to intimidate Pickens into recanting his testimony. Specifically, Pickens testified that Raymond informed him that Raymond had visited Appellant in prison. ***See*** N.T., 11/2/17, at 87-89. During that visit, Appellant advised Raymond

that Pickens had testified against him at the preliminary hearing. ***See id***., at 89. Further, the Commonwealth produced prison visitor logs corroborating the fact that Raymond had visited Appellant in prison three times, with the last visit occurring after Pickens' preliminary hearing testimony. ***See*** N.T., 11/3/17, at 70.

Appellant asserts that the trial court improperly relied upon Pickens' testimony at trial when justifying its earlier decision to deny Appellant's motion *in limine*. Appellant highlights the fact that Pickens did not testify about what Raymond told him until after the court had already ruled the testimony admissible.

It is true that Pickens did not testify before the court ruled on Appellant's motion *in limine*. However, Appellant did not request that Pickens testify. Rather, both Appellant and the Commonwealth presented argument based upon the Commonwealth's proffer. ***See*** N.T. Trial, 10/30/17, at 29-39. In this proffer, the Commonwealth noted that Pickens would testify that Raymond visited Appellant in prison and tells Pickens that Appellant "told him everything." ***Id***., at 29. As the Commonwealth noted in its argument to the trial court, this phrasing clearly implied that Appellant informed Raymond about Pickens' testimony at Appellant's preliminary hearing.

Appellant also takes issue with the trial court's reliance on the Rideout shooting as support for its finding that Raymond's threats were traceable to Appellant. According to Appellant, the trial court erred in relying on the Rideout shooting in its opinion because there "is no connection whatsoever"

between that shooting and Raymond's visit to Pickens. Appellant's Brief, at 37.

Contrary to Appellant's contention, there was a clear connection between the two. At Appellant's preliminary hearing, Pickens implicated Appellant in both the Walker murder as well as in the Rideout shooting and it was this testimony that Raymond, after visiting Appellant in prison, warned Pickens to "make right."

To the extent that Appellant argues that the Rideout shooting was an inadmissible prior bad act, despite the fact that it was one of the two crimes he was on trial for at his consolidated trial, the shooting was clearly part of the history of the case. *See Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa. Super. 2016) (evidence of prior bad act admissible if it is part of the history of case and forms part of the natural development of the facts). In any event, even without the reference to the Rideout shooting, there was a sufficient basis for the trial court to find that Appellant was connected to the threats and therefore deny Appellant's motion *in limine.*

We see no abuse of discretion in the trial court's conclusion that there was sufficient evidence linking Appellant to Raymond's efforts to intimidate Pickens and therefore, that Pickens' testimony about those efforts was admissible. *Compare Commonwealth v. King*, 689 A.2d 918, 923 n.6 (Pa. Super. 1997) (alleged instance of third party's act of intimidation against witness was inadmissible when there was no evidence linking that act to the defendant other than his friendship with the third party and no evidence that

the act of intimidation actually occurred). Moreover, the trial court specifically instructed the jury that it could only consider the witness intimidation testimony for the limited purpose of establishing Appellant's consciousness of guilt. Appellant's first issue on appeal merits no relief.

Next, Appellant contends that the trial court abused its discretion by denying the motion *in limine* to bar Pickens' testimony about the threats Raymond made to him because such testimony constituted inadmissible hearsay. This claim also fails.

There is no dispute that Raymond's statements were being offered for the truth of the matter asserted and are therefore hearsay. ***See Commonwealth v. Puksar***, 740 A.2d 219, 225 (Pa. 1999) (hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement). Hearsay is generally not admissible unless it falls within one of the exceptions to the hearsay rule listed in the Pennsylvania Rules of Evidence. ***See Commonwealth v. Savage***, 157 A.3d 519, 524 (Pa. Super. 2017). One of those exceptions is the co-conspirator exception, which permits the out-of-court declarations of one co-conspirator to be admitted against another co-conspirator if the declarations were made during and in furtherance of the conspiracy. ***See Commonwealth v. Coccioletti***, 425 A.2d 387, 391 (Pa. 1981).

The trial court below found, and we agree, that there was ample evidence to conclude that a conspiracy existed between Raymond and Appellant to intimidate Pickens. The court stated:

Here, as discussed [in Appellant's first claim], there was ample evidence for the Court to conclude that a conspiracy existed between Raymond and [Appellant] to intimidate Pickens and obstruct justice. According to Pickens, Raymond said that he had visited [Appellant] in prison and that [Appellant] told him "everything" about [Pickens'] preliminary hearing testimony against [Appellant]. Furthermore, the Commonwealth corroborated [Pickens'] testimony by providing the prison's visitor logs which established that Raymond did indeed visit [Appellant] on three occasions. Additionally, the statements were made in the course of, and in furtherance of the conspiracy, as Raymond made the statements during his attempt to convince Pickens to recant.

Trial Court Opinion, at 8-9.

In asserting that the trial court erred in reaching this conclusion, Appellant merely recycles many of the meritless arguments that he made when presenting his first claim. No relief is due.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/19