J-A09030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARVIS PAYTON | : | |
| | : | |
| Appellant | : | No. 935 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 5, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001864-2018

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:            **FILED SEPTEMBER 26, 2022**

Jarvis Payton ("Payton") appeals from the judgment of sentence imposed after a jury found him guilty of aggravated assault, possession of a firearm by a prohibited person, and firearm not to be carried without a license.[1]  We affirm.

We summarize the facts and procedural history of this appeal from the record.  James Robinson ("Robinson") rented a room in the home of Syretta Coleman-Bey ("Coleman-Bey").  In the early morning hours of October 15, 2017, Robinson and Coleman-Bey got into an argument when Coleman-Bey tried to evict Robinson, and they both called people to come to their aid.  **See** N.T., 2/11/19, at 57-63.  Robinson used his phone to record the argument

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2702, 6105, 6106.

after the people arrived at the home. *See id*. at 57, 59. Police arrived at approximately 1:42 a.m. and settled the argument and then left. After the police left, Robinson and Coleman-Bey engaged in a brief altercation when Coleman-Bey grabbed Robinson as he was returning to his room and Robinson pushed her off him. *See id*. at 62-64. The other people left the home, and only Robinson and Coleman-Bey remained in the home. *See id*. at 62-63. Robinson was cleaning up his room, when a man arrived at the home, went to Robinson's room, and accused Robinson of putting his hands on the mother of his child. *See id*. at 65, 107-08. Robinson and the man exchanged words until Robinson closed the door to his room. *See id*. at 65. Robinson heard the man and Coleman-Bey talking outside in the hallway, and then the door to his room burst open. *See id*. The man drew a pistol and shot Robinson in the leg. *See id*. Coleman-Bey and the man fled down the stairs, and Robinson climbed out the window of his room to a neighbor's home where he waited for police to arrive.

Robinson spoke to police after the shooting. He maintained that the man who shot him accused Robinson of touching or scratching the mother of the man's child and had used a black gun resembling Robinson's own Glock 40 pistol.[2] *See id*. at 68, 108. Although Robinson initially told police that he did not know the man, he also stated that he could identify the shooter. *See*

_____

[2] Robinson owned a Glock 40 semiautomatic pistol, which he used for security work. *See* N.T., 2/11/19, at 68, 118-19. He did not have his gun at the time of the shooting. *See id*. at 119.

*id*. at 80.  Robinson later gave police additional information that led to his identification of Payton, the father of Coleman-Bey's child, from a photographic array on October 27, 2019.  *See id*. at 85-89.  Police searched Coleman-Bey's home pursuant to a warrant and recovered a bullet from Robinson's room, which the Firearms Identification Unit ("FIU") classified as either a .38 or a 9-millimeter projectile; however, the police did not find a fired cartridge casing in the home.  *See* N.T., 2/12/19, at 63-66, 91, 134-37, 139-40.[3]

Approximately two weeks after the shooting, but before the filing of charges in this case, police stopped Payton while he was driving with his paramour, Kim Myers ("Myers"), in Myers's car.  *See id*.at 118-20, 122. During the stop, officers saw an unregistered black .38 revolver in the glove compartment.  *See id*. at 120-21.  Officers examined the revolver and asked the occupants of the car about it, but they did not confiscate the revolver or pursue criminal charges concerning the gun because Myers had a license to

_____

[3] The trial evidence indicated that the FIU classified the bullet as a .38 or 9-millimeter because it could have been fired by a revolver or a semiautomatic pistol.  *See* N.T., 2/12/19, at 146.  There was also testimony that a semiautomatic pistol would eject a fired cartridge casing, but a revolver would not.  *See id*. at 136-37.  Additionally, the trial evidence established that a Glock 40 is a semiautomatic pistol and would not resemble a .38 revolver because a revolver would have a visible cylinder holding the ammunition.  *See id*. at 92.

carry a concealed weapon and Payton told the officers that Myers owned the gun.[4]  *See id*. at 120-22.

In November 2017, the Commonwealth filed charges against Payton for the shooting.  Payton was arrested in February 2018, and Robinson testified at Payton's preliminary hearing.  In December 2018, a group of men approached Robinson and his family in a local store and offered him money to not testify at trial.  *See* N.T., 2/11/19, at 150-51.

The parties litigated motions *in limine* concerning the offer of money to Robinson, Payton's recorded prison phone calls, and the .38 revolver that officers observed in Myers's car.  *See* N.T., 2/12/19, at 113-14; N.T., 2/11/19, at 7-17.  The trial court ruled that the offer of money to Robinson was relevant and that testimony about the .38 revolver was admissible in light of conflicting evidence about the type of gun that was used.  *See* N.T., 2/12/19, at 114; N.T., 2/11/19, at 15.  The trial court, however, denied the Commonwealth's motion to admit evidence of Payton's recorded prison phone calls, in which Payton, the Commonwealth argued, used coded language and admitted to

---

[4] Myers, who testified at trial for Payton, stated that the .38 revolver was hers and that she sold the gun in April 2018.  *See* N.T., 2/13/19, at 14-15.  She asserted that Payton would not have had access to the revolver without her knowledge.  Additionally, Myers testified as an alibi witness for Payton and averred that she drove Payton to Coleman-Bey's home during the earlier argument between Coleman-Bey and Robinson.  *See id*. at 8.  She stated that they left without incident, returned to her home, watched a movie, and went to sleep.  *See id*. at 8-10.  She testified that Payton could not have left her house at the time of the shooting because she had activated her home alarm and he did have her alarm code.  *See id*. at 10.

attempting to intimidate or influence Robinson's testimony. **See** N.T., 2/11/19, at 7-17; N.T., 2/12/19, at 12.

Robinson testified at trial and positively identified Payton as the individual who shot him. **See** N.T., 2/11/19, at 92 (indicating that Robinson was "100% confident" that Payton was the individual who shot him). At the conclusion of trial, a jury found Payton guilty of aggravated assault, possession of a firearm by a prohibited person, and firearm not to be carried without a license. On April 5, 2021, the trial court sentenced Payton *in absentia*[5] to an aggregate term of thirteen and one-half to twenty-seven years of imprisonment. Payton filed timely post-sentence motions, which the trial court denied. Payton timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Payton raises the following issues for our review:

1. Did the trial court err and abuse its discretion when the court granted the Commonwealth's motion *in limine* and permitted the prosecutor to question [Robinson] about an incident where someone offered him money not to testify?

---

[5] As noted by the trial court, the court had ordered a mental health evaluation and presentence investigation report before sentencing and received information that Payton was not competent to participate at a sentencing hearing. **See** Trial Court Opinion, 8/4/21, at 11. The trial court continued sentencing and ordered mental health treatment for Payton. **See id**. (citing 50 P.S. §§ 7304, 7405). Although Payton was later found competent to participate, he ultimately refused COVID testing, which was a requirement for his transportation from prison to court. **See id**. at 13. The trial court determined that Payton's refusal to attend sentencing was willful and proceeded to sentence Payton i*n absentia*.

2. Did the trial court err and abuse its discretion when the court denied Mr. Payton's oral motion *in limine* and permitted the prosecutor to elicit evidence about another person's gun?

3. Did the trial court abuse its discretion at sentencing when the court relied on impermissible factors and imposed a manifestly excessive sentence?

4. Was the verdict against the weight of the evidence?

Payton's Brief at 6.

Payton's first two issues challenge the trial court's rulings on the motions *in limine*. We review a trial court's rulings on motions *in limine* using the same abuse of discretion standard governing evidentiary rulings. **See Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa. Super. 2013) (noting that the admission of evidence is committed to the sound discretion of the trial court). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." **Commonwealth v. Christine**, 125 A.3d 394, 398 (Pa. 2015) (internal citation and brackets omitted). This Court will reverse the trial court's evidentiary ruling only if the appellant sustains his heavy burden to show that the trial court has abused its discretion. **See id**.

In his first issue, Payton asserts that the trial court abused its discretion in allowing testimony that someone offered Robinson money to not testify at trial. Specifically, Payton contests Robinson's testimony, during the

Commonwealth's redirect examination,[6] that he was in a store with his family when a group of men approached, and one of the men asked who "got shot in the leg?" **See** N.T., 2/11/19, at 151. Robinson continued that when his cousin pointed to him, the person came over to him and said, "You might as well not even go to court. We've got some bread for you." **See id**. Robinson recalled that the person offered him $5,000. **See id**. at 152.

Pennsylvania Rule of Evidence 404(b) prohibits the use of bad acts evidence to show propensity, but it permits the admission of that evidence for a proper evidentiary purpose if the probative value of the evidence outweighs its potential for unfair prejudice. **See Commonwealth v. Yale**, 249 A.3d 1001, 1015 (Pa. 2021). One such proper evidentiary purpose is to show consciousness of guilt. **See Commonwealth v. Johnson**, 838 A.2d 663, 680 (Pa. 2003) (noting that "testimony regarding attempts by a defendant in a criminal prosecution to interfere with witnesses is admissible to show the defendant's consciousness of guilt"). When parties other than the defendant, attempt to interfere with a witness's testimony, the Commonwealth must

---

[6] The Commonwealth emphasizes that it did not elicit this evidence during direct examination. **See** Commonwealth's Brief at 11. Rather, the Commonwealth notes that it only questioned Robinson about the offer of money **after** Payton cross-examined Robinson about whether Payton approached him before trial. The Commonwealth asserts that Payton therefore "invited" the Commonwealth's questioning about the offer of money during redirect examination. **See id**. at 12-13. We disagree with the Commonwealth's analysis because the Commonwealth proffered the evidence in a motion *in limine*, and the trial court had already ruled that the offer of money was admissible. **See** N.T., 2/11/19, at 15. Thus, the principle that a defendant may "invite" the admission of otherwise inadmissible evidence does not apply here.

connect the defendant to the attempted interference by the third parties. *See*

*id*. (noting that statements by third parties to a witness are admissible when,

for example, the defendant is aware of and authorizes the statements). The

threshold connection between the defendant and the proffered interference

cannot be speculative. *See Commonwealth v. King*, 689 A.2d 918, 922-23

& n.6 (Pa. Super. 1997) (holding that a defendant's threats to kill a witness

were admissible as consciousness of guilt evidence, but evidence of alleged

break-ins at the witness's home was inadmissible because there was no

indication that the defendant organized or ordered the break-ins at the home,

or that the break-ins occurred).

Payton argues that the trial court abused its discretion in granting the

Commonwealth's motion *in limine* because there was no connection between

him and the offer of money to Robinson and because the trial court failed to

balance the relevance of the evidence against the potential for unfair

prejudice.[7] In response, the trial court asserts that it admitted evidence of

_____

[7] Payton, when arguing that the evidence was prejudicial, also refers to the Commonwealth's intent to show that he attempted to intimidate Robinson by having Robinson "contacted or eliminated." *See* Payton's Brief at 8. However, Payton takes any reference to possible acts of violence out of context because such references only concerned the Commonwealth's proffer of evidence about the prison phone calls, which were not admitted at trial. Nothing in the record indicates that the Commonwealth presented evidence to the jury that Payton threatened physical violence against Robinson or had others do so on his behalf. Payton also contends that the trial court erred by failing to consider the need for the evidence or the efficacy of alternative proofs. However, Payton did not raise these arguments during the litigation of the *motion in*
*(Footnote Continued Next Page)*

the offer of money to Robinson because "it potentially corroborated [Payton's] consciousness of guilt" and was not unfairly prejudicial. **See** Trial Court Opinion, 8/4/21, at 6.

Our review of the record reveals support for the trial court's ruling to admit evidence of the offer of money to Robinson.[8] In December 2018, someone offered money to Robinson to not testify at trial. Robinson's testimony about the offer of money referenced details of the case, namely, that Robinson had been shot in the leg, and that a court date was pending. The Commonwealth also linked the offer of money with Payton's prison phone call recordings from February and March 2018 as consciousness of guilt. Those phone calls included coded references to Robinson's age and appearance, as well as references to the fact that he testified at the preliminary hearing.[9] Thus, there was some support for the trial court's

_____

*limine*. **See** N.T., 2/11/19, at 9-10. Therefore, we will not address them for the first time on appeal. **See** Pa.R.A.P. 302(a).

[8] We acknowledge that the trial court did not explain its ruling that the evidence of the offer of money to Robinson was relevant or its decision to overrule Payton's objection that the proffer was not supported by a foundation that he was involved in the offer of money to Robinson. However, this Court may affirm the trial court's evidentiary ruling on any basis apparent in the record. **See Commonwealth v. Moore**, 937 A.2d 1062, 1073 (Pa. 2007).

[9] The Commonwealth argued that during the recorded calls from February 2018, Payton used names of acquaintances to indicate Robinson's first and last name. **See** N.T., 2/12/19, at 7. The Commonwealth then asserted that Payton used the term "plate" to refer to a witness who appeared at the preliminary hearing, and that "eat the meal" or "plate" meant doing something to get Payton home. **See id**. at 8-9. As to calls in March 2018, the
*(Footnote Continued Next Page)*

conclusion that the Commonwealth's proffer could establish Payton's consciousness of guilt. Payton, furthermore, fails to articulate any unfair prejudice resulting from the evidence of the offer, and his bald assertion that the evidence of the offer aroused in the jury an "overmastering hostility" toward him lacks support in the record. **See** Payton's Brief at 20. Thus, Payton has not carried his heavy burden of establishing that the trial court abused its discretion in granting the Commonwealth's motion *in limine*.

In any event, even if the trial court erred in determining or balancing the relevance and prejudice of the Commonwealth's proffer, our review of the record compels us to conclude that any error in the court's ruling was harmless. In a criminal case, an appellate court may also deem an erroneous evidentiary ruling harmless beyond a reasonable doubt and affirm on that alternative basis. **See Commonwealth v. Holt**, 273 A.3d 514, 540 (Pa. 2022). An error is harmless if: (1) the error did not prejudice the defendant, or the prejudice was *de minimis*; (2) the erroneously admitted evidence was

_____

Commonwealth asserted that Payton used the term "coat" when referring to Robinson and discussed the "coat" not having a beard and being bald. **See id**. at 9. The Commonwealth claimed that it did not have time to review additional recordings of Payton's phone calls before trial. **See id**. Although the trial court determined that the evidence of the prison phone calls was too "tenuous" and would be confusing for the jury as a party admission by Payton, **see id**. at 14-15, the court could have considered the Commonwealth's proffer about the phone calls in conjunction with the evidence of the offer of money to Robinson to determine there was an adequate foundation to link Payton to the offer of money. **Cf.** Pa.R.E. 104(a) (stating that the trial court must decide any preliminary questions concerning the admissibility of evidence, but "[i]n so deciding the court is not bound by evidence rules except on privilege").

merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *See id*.

Our review of the record establishes that the primary issue at trial was the reliability of Robinson's identification of Payton as the person who shot him. Robinson consistently stated that the man who shot him accused him of touching or scratching the mother of the man's child, *i.e.*, Coleman-Bey. *See* N.T., 2/11/19, at 79-80, 107-08. Robinson subsequently gave the police information leading to Payton's identification, including the facts that Robinson had recorded Payton being at the home during the earlier argument with Coleman-Bey, he was familiar with Payton being the father of Coleman-Bey's child, and there was a picture of the man who shot him with Coleman-Bey and a child in Coleman-Bey's china cabinet. *See id*. at 85-87. Twelve days after the shooting, Robinson identified Payton with 100% certainty from a photographic array and again at trial. *See id*. at 88-90. Although there were discrepancies in the evidence about the events preceding the shooting and the type of gun Payton used, we conclude that there was overwhelming evidence of Payton's guilt based on Robinson's consistent, unqualified, and unhesitating identification of Payton as the man who shot him, and any error in the admission of evidence of the offer of money to Robinson was insignificant by comparison. Thus, Payton's first issue merits no relief.

- 11 -

In his second issue, Payton asserts that the trial court abused its discretion in denying his motion *in limine* to preclude references to the .38 revolver that officers observed in Myers's car after the shooting. Evidence of a weapon that is not specifically linked to a charged crime is generally inadmissible; however, the fact that a defendant had a weapon suitable to the commission of the charged crime is admissible. **See Christine**, 125 A.3d at 400. If the Commonwealth offers the evidence about such a weapon, it must establish a foundation that would permit the finder of fact to infer a likelihood that the weapon was used in the commission of the crime, but the Commonwealth need not definitively establish that the weapon was actually used in the charged crime. **See Holt**, 273 A.3d at 537. Any uncertainty that the proffered weapon is the actual instrument used in the charged crime goes to the weight, not the admissibility of evidence about the weapon. **Christine**, 125 A.3d at 400.

Payton contends that the trial court abused its discretion because there was no indication that the .38 revolver in Myers's car was used in the shooting. Payton emphasizes Robinson's testimony that the gun Payton had used looked like Robison's own semiautomatic Glock 40. Payton further argues that the trial court failed to balance the prejudicial effect of evidence about the revolver because it caused the jury to speculate about the gun used in the shooting and impugned Payton's and Myers's character.

The trial court explained that there was conflicting evidence about whether the firearm used was a semiautomatic pistol or a revolver. **See** Trial

Court Opinion, 8/4/21, at 8. The court reasoned that evidence of the .38 revolver found during the traffic stop "could assist the jury in determining what evidence to consider in their final deliberations." *See id*. The court further concluded that the evidence was not unfairly prejudicial because the evidence about the .38 revolver did not "tend to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Id.*

Our review of record establishes that Robinson testified that he "knew" Payton shot him with what looked like a Glock 40 semiautomatic pistol, Robinson noted that Payton had burst through the doorway and he only had two to three seconds to look at the gun before being shot. *See* N.T., 2/11/19, at 67-68, 105-06. Further, the Commonwealth presented evidence that the bullet recovered from Robinson's room could have been fired by a .38 revolver or a 9-millimeter semiautomatic pistol, that no fired cartridge casing was recovered, and that a .38 revolver, unlike a semiautomatic, would not eject a casing. *See* N.T., 2/12/19, at 23, 134-36, 140. There was thus a foundation for the jury to infer a likelihood that the .38 revolver in Myers's car, approximately two weeks after the shooting, was used in the shooting. The question of whether the revolver was actually used in the shooting accordingly went to the weight, not the admissibility, of the evidence. *See Christine*, 125 A.3d at 400. Further, contrary to Payton's argument, the evidence of the .38 revolver was not unfairly prejudicial and had no tendency to impugn Payton's or Myers's character as the record established that Myers was

licensed to carry a firearm in her car. Thus, Payton has failed to establish an abuse of discretion in the trial court's decision to admit evidence of the .38 revolver, and he is therefore due no relief.

Payton's third issue asserts that the trial court imposed a manifestly excessive sentence because the court relied on improper factors. A claim that a sentencing court considered an improper factor presents a challenge to the discretionary aspects of the sentence. *See Commonwealth v. Tobin*, 89 A.3d 663, 667-69 (Pa. Super. 2014) (holding that the assertion that a sentencing court improperly considered *nolle prossed* charges constitutes a discretionary sentence claim). A discretionary aspects of sentence claim is not appealable as of right; the appellant must invoke this Court's jurisdiction by satisfying a four-part test. This Court must determine:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly presented at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's claim has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citations and brackets omitted).

Our review of the record reveals that Payton timely appealed and filed a post-sentence motion. However, Payton's post-sentence motion only sought reconsideration of his sentence on the grounds that he was not present at the sentencing hearing, did not have an opportunity to allocute, and did not have

an opportunity to present evidence or witnesses. *See* Post-Sentence Motion, 4/15/21, at ¶¶ 13-16. Payton's post-sentence motion did not raise a claim that the trial court's sentence was manifestly excessive due to the court's alleged consideration of improper factors. *See id*. Thus, we conclude that Payton waived his discretionary aspects of sentencing challenge for appellate review.

Payton's fourth issue challenges the weight of the evidence. A motion for a new trial is addressed to the trial court's discretion.[10] *See Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). A trial court should not grant a weight claim because of a mere conflict in testimony or because it would have decided the case differently, it should only award a new trial on weight grounds where the verdict is so contrary to the evidence as to shock one's sense of justice. *See id*. It is for the jury to resolve contradictory testimony and questions of credibility. *See Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021).

We assess a trial court's ruling on a weight claim by examining the trial court's exercise of discretion; we do not make an independent determination

---

[10] We note that Payton's post-trial motion conflated a challenge to the sufficiency of the evidence and the weight of the evidence, and at no point did he specifically request a new trial based on the weight of the evidence. *See* Pa.R.Crim.P. 607(A) (requiring that a challenge to the weight of the evidence be raised in a motion for a new trial); *see also* Post-Sentence Motion, 4/15/21, at ¶ (seeking judgment of acquittal "based on the jury's verdict being against the weight of the evidence"). However, because the trial court addressed Payton's weight of the evidence challenge, we decline to find waiver in this case.

of whether we believe the verdict is against the weight of the evidence. **See**

***Clay***, 64 A.3d at 1055. One of the least assailable reasons for granting or

denying a new trial is the lower court's conviction that the verdict was or was

not against the weight of the evidence. ***See Commonwealth v. Landis***, 277

A.3d 1172, 1183-84 (Pa. Super. 2022).

Payton argues that the verdict shocks the conscience because the trial

evidence at trial was "contradictory and tenuous." ***See*** Payton's Brief at 28.

Payton emphasizes Robinson's testimony that Payton shot him with a Glock

40, while the Commonwealth presented evidence that Payton could have shot

him with a .38 revolver. He contends that the mere fact that police found

Payton in a car with .38 revolver after the shooting was entitled to no weight.

He also asserts that testimony about the recovery of the bullet from

Robinson's room and Robinson's account of the events leading to the shooting

were unworthy of belief.

The trial court rejected Payton's arguments, reasoning that "it was the

sole province of the jury, as the fact-finder, to assess the credibility . . . and

determine the weight to be given to their testimony and resolve any conflicts

in their testimony." Trial Court Opinion, 8/4/21, at 16. The court explained

that the jury's credibility determinations concerning Robinson's identification

of Payton as the person who shot him was corroborated by the trial evidence

and did not shock the conscience. ***See id***.

Following our review, we discern no abuse of discretion in the trial

court's decision. Robinson's in-court identification of Payton as the person

who shot him was certain and without qualification. Although Payton focuses on the fact that Robinson testified that Payton shot him with what looked like a Glock 40, it remained within the province of the jury to resolve the questions of fact before it. Because Payton has not established that the trial court abused its discretion, his challenge to the weight of the evidence merits no relief.

Judgment of sentence affirmed.

Judge Pellegrini files a concurring memorandum in which Judge Nichols joins.

Judge Nichols concurs in the result of this memorandum.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2022